THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL KARIM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 7858 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| RANDY PFISTER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Samuel Karim is currently incarcerated at Stateville Correctional Center. He filed suit against Stateville staff alleging violations under 42 U.S.C. § 1983. Karim alleges that on or around January 17, 2017, and January 24, 2017, Plaintiff's cell was the subject of a shakedown that was intended to harass him as retaliation for an earlier lawsuit he had filed. Plaintiff claims that during this shakedown, non-contraband material including his mail, legal work, trial transcript, eyeglasses, night guards, grievances, religious books and materials, and other books including "The Art of War" were seized. (Dkt. 1 at 10; Dkt. 8 at 10–11).[1] Defendants Maurice Lake and Cynthia Harris filed a Motion for Summary Judgment arguing that there is no issue of material fact regarding whether Major Lake lacks retaliatory motive regarding the January 17 and 24, 2017 shakedowns, because *respondeat superior* is not a cause of action under § 1983, and because Plaintiff's discipline imposed by Defendant Harris does not implicate a protected right that triggers due process rights. For the reasons that follow, Defendants' Motion for Summary Judgment [Dkt. 47] is granted.

---

[1] Plaintiff filed his Complaint along with an application to proceed *in forma pauperis*. The Court dismissed the majority of Plaintiff's claims pursuant to 28 U.S.C. § 1915A but held he could proceed with an Amended Complaint against Defendant Lake for his claims concerning purportedly retaliatory and destructive cell searches and his due process claim against Defendant Harris. (*See* Dkt. 7).

1

## BACKGROUND

The below facts come from Defendants' Rule 56.1 Statement of Facts.[2] (Dkt. 45). Plaintiff is an inmate in custody of the Illinois Department of Corrections ("IDOC") and is incarcerated at Stateville Correctional Center. (Dkt. 45 ¶¶ 2, 3). Defendant Maurice Lake was a correctional major, a supervisor, at Stateville and Defendant Cynthia Harris was a correctional counselor at Stateville. (*Id.* at ¶¶ 4,5).

Plaintiff does not know who ordered the January 17, 2017 shakedown or the January 24, 2017 shakedowns. (*Id.* ¶¶ 6, 7). As a result of his January 17, 2017 disciplinary ticket, Plaintiff was issued a verbal reprimand, but he was not sent to segregation. (*Id.* ¶ 8). On January 17, 2017, a tactical team handcuffed and escorted Plaintiff and other inmates to the cafeteria in order to conduct a shakedown. (*Id.* ¶ 9). During this shakedown, Correctional Officer S. Taylor from Illinois River Correctional Center issued Plaintiff a disciplinary report and shakedown record, because of his possession of The Art of War by Sun Tzu, a banned book. (*Id.* ¶¶ 11, 12).

On January 20, 2017, Defendant Harris held a hearing for Plaintiff's January 17, 2017 ticket issued for possession of banned book. (*Id.* ¶ 13). As a result of the January 20, 2017 hearing, Defendant Harris recommended that Plaintiff be issued a verbal reprimand for his possession of a banned book. (*Id.* ¶ 14).

---

[2] Plaintiff proceeded *pro se* after the Court determined that he had sufficient ability to press his claims and provided him with guidance on how to do so. Karim has filed seven previous lawsuits in this district and, with the exception of two which were closed, he successfully reached settlement in five. *See Karim v. Derby*, 10 CV 1416 (42 U.S.C. § 1983 claim after Karim was hit with buckshot from prison guard's shotgun in prison yard; settled); *Karim v. Internal Affairs Division*, 12 CV 6934 (Section 1983 claim for alleged retaliation for Plaintiff's grievances; settled); *Karim v. Godinez*, 14 CV 1318 (Section 1983 claim for deliberate indifference to his cell conditions; (2) deliberate indifference to his pneumonia and collapsed lung; and (3) deliberate indifference to his abscessed tooth; settled); *Karim v. Mitchell*, 14 CV 5090 (closed because it pertained to the same deliberate indifference claims as 14 CV 1318); *Karim v. Ghosh*, 15 CV 408 (Section 1983 claim for deliberate indifference to Karim's alleged back condition; settled); *Karim v. Lemke*, 15-4803 ( Section 1983 claim for Eighth Amendment violations for (1) the quality of the food and water he received at Stateville; and (2) the quality of his shelter; settled); *Karim v. Obaisi et al.*, 16-7932 (Section 1983 claim for deliberate indifference to diagnosing, monitoring, and managing his diabetes condition; closed).

On January 24, 2017, a tactical team handcuffed Plaintiff and other inmates and escorted them away from their cells in order to conduct another shakedown. (*Id.* ¶ 10). On January 24, 2017, Correctional Officer Morger from Danville Correctional Center issued Plaintiff a disciplinary report because he was in possession of the following excess property: 17 magazines, 22 books, and 4 laundry bags full of legal papers. (*Id.* ¶ 15). Officer Morger confiscated Plaintiff's excess property because it no longer fit in his property box and issued a shakedown slip to Plaintiff indicating that the above property was confiscated from his cell. (*Id.* ¶¶ 16, 17).

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). As the "'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving

party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* Because Plaintiff is proceeding *pro se*, his pleadings are "to be liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (trial courts are "obligated to liberally construe *a pro se* plaintiff's pleadings").

## DISCUSSION

Plaintiff, who is proceeding *pro se*, was provided with written notice of the consequences of Defendant's motion for summary judgment and the correct procedures for responding to it as required by Local Rule 56.2. (Dkt. 46); *see Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (requiring notice to *pro se* plaintiff of failure to properly respond to a summary judgment motion). The Court also provided information each time Plaintiff appeared on the phone for his statuses about links for proceeding *pro se* and also provided him with a primer for responding to a motion for summary judgment. Plaintiff is no stranger to federal litigation and has filed eight civil rights lawsuits while he has been incarcerated. He has been very successful in reaching settlements in the vast majority of his cases. He is therefore an experienced litigator of his claims and knows the procedures well and has appeared many times before the court telephonically. Plaintiff, in his response, failed to adequately cite the record or show "that the materials [Defendant] cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Plaintiff further did not file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). Based on Plaintiff's procedural deficiencies, the Court is within its discretion to enforce the requirements of Local Rule 56.1 and deem Defendants' statements of fact admitted. *See Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664

(7th Cir. 2010) (nonprecedential disposition) ("strictly enforcing Local Rule 56.1 [i]s well within the district court's discretion even though [plaintiff] is a *pro se* litigant") (citing *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359–60 (7th Cir. 2009); Fed. R. Civ. P. 56(e) (where party violates Rule 56(c) the court "may...consider the fact undisputed for purposes of the motion")).

Despite this, Plaintiff has filed a response brief and set forth facts he believes are material. Of course, Plaintiff has also admitted that "Plaintiff agrees with Defendants' statement of facts contained in the introduction of their memorandum of law…" (Dkt. 61 at 2). Because of Plaintiff's *pro se* status, the need to address any arguments the Court can discern from his pleadings, *Parker*, 845 F.3d at 811, and the Seventh Circuit's admonition that "district judges should accord special attention to *pro se* litigants faced with summary judgment motions," *Timms*, 953 F.2d at 284 (citations omitted), the Court will excuse Plaintiff's procedural faults and assess the motion for summary judgment on the merits.

However, the Court notes that Plaintiff raises numerous arguments that are no longer germane. Specifically, Plaintiff raises arguments pre-dating November 28, 2016, access to the courts, and claims against Randy Pfister. (Dkt. 61 at 5, 9, 10, 11, 13, 14). However, these claims have already been dismissed by this Court. The Court dismissed Plaintiff's claims against Randy Pfister and his claims about court access on January 18, 2019 pursuant to 28 U.S.C. § 1915A. (Dkt. 7). Plaintiff's claims pre-dating November 28, 2016 were dismissed on May 9, 2019. (Dkt. 18).

Additionally, Plaintiff raises new claims alleging a failure to provide "post-deprivation remedies," a continuing violation of his First Amendment rights to be free from retaliation, and that the then-Warden Randy Pfister is personally liable as he was aware of the alleged retaliation efforts against Plaintiff. (Dkt. 61 at 15, 12, and 13). Plaintiff has now filed a Motion to Amend

his Complaint (Dkt. 63), but Plaintiff's Motion to Amend is denied as it arrived only after all the briefing for summary judgment was completed. The Court will only resolve the issues and factual disputes that are properly before the Court; namely, Plaintiff's First Amendment Retaliation Claim against Major Lake and his Due Process claim against Defendant Harris.

## I. First Amendment Retaliation Claim

### A. Plaintiff Fails to Show a First Amendment Retaliation Claim

To prevail on a First Amendment Retaliation claim under § 1983, a plaintiff must establish the following three elements. "First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). The third prong, the "motivating factor," amounts to a "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). To show this causal link, "[c]ircumstantial evidence may include suspicious timing, ambiguous statements, behavior, or comments directed at other[s] ... in the protected group." *Id.* (citing *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)). Yet, "merely alleging the ultimate fact of retaliation is insufficient" to survive summary judgment. *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985). Once a *prima facie* case of retaliation is established, the burden shifts to the defendant to rebut the claim that the activity would have occurred regardless of the protected activity. *Kidwell*, 679 F.3d at 965. The petitioner must demonstrate the proffered reason is pretextual or dishonest. *Id*. at 969.

Defendants do not dispute that filing lawsuits and grievances is a protected First Amendment activity nor that his shakedown was an adverse activity. *See Manuel v. Nalley*, 966

F.3d 678, 680 (7th Cir. 2020) (proceeding to third prong of test where plaintiff filed lawsuits and grievances against prison officials and where shakedown was undisputedly an adverse activity). Instead, Defendants focus on the third prong: whether the protected conduct was a motivating factor. Here, Plaintiff in his Complaint alleges that Major Lake retaliated against him for filing lawsuits and grievances and that the January 17 and 24, 2017 shakedowns were retaliatory. (Dkt. 8 at 10–11; 19–20). Plaintiff reiterates these claims in his Response but fails to cite to any evidence in the record beyond his own "information and belief." (Dkt. 61 at 3–4; 8). The record demonstrates that Plaintiff does not know who ordered the January 17 or the January 24, 2017 shakedowns. (Dkt. 45 ¶¶ 6, 7). Significantly, the record shows that Plaintiff was not targeted during these shakedowns as he was not the only inmate to have undergone a shakedown of his cell on these two dates. (*Id.* at ¶¶ 9, 10).

The only potential link between Plaintiff's lawsuits and the shakedowns is that the shakedown happened after he filed his lawsuits. Yet, a plaintiff cannot establish retaliation by simply showing the protected activity happened before the defendants took their action. Suspicious timing alone will rarely be sufficient to create a triable issue because "[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011). It is notable that Plaintiff fails to present any circumstantial evidence to bolster his claim, for example, that Defendant Lake was a defendant in his previous lawsuits or that he was even aware of these previous lawsuits and grievances. He additionally fails to show which grievance or lawsuit gave rise to the alleged retaliatory motive behind the January 17 and 24, 2017 shakedowns, so the Court is unable to determine how suspicious the timing may be. Plaintiff's prior cases that he cites in

7

his Complaint were filed between 2012 and 2016. (Dkt. 8 at 4–9). A span of several years between the filing of a case and a shakedown is too tenuous to constitute suspicious timing.

The evidence that is properly before the Court shows that Major Lake did not conduct the shakedowns of Plaintiff's cell, he did not find or remove contraband and excess property, and did not issue the resulting disciplinary reports. Instead, these actions were taken by correctional officers from other correctional centers. (Dkt. 45 ¶¶ 11, 12, 15–17). There is no material fact in dispute that shows that Major Lake had, or could have had, any retaliatory motive against Plaintiff for filing lawsuits. The only support is Plaintiff's speculative allegations, but this does not suffice at summary judgment. *Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016); *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir.2013) (finding that a plaintiff's speculation cannot create a genuine issue of material fact regarding retaliatory motive).

### B. *Respondeat Superior* Also Precludes Plaintiff's Claims Against Major Lake

Plaintiff also must show that Major Lake was personally involved in his First Amendment Retaliation claim in order to prevail. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Additionally, "[t]he Constitution does not make public employees strictly, let alone vicariously, liable for injuries that befall their charges." *Pacelli v. DeVito*, 972 F.2d 871, 875 (7th Cir. 1992). Therefore, "Section 1983 does not create collective or vicarious responsibility. Supervisors are not liable for the errors of their subordinates." *Id.* at 878; *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (holding that the doctrine of *respondeat superior* does not apply to actions brought under § 1983; to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right.").

8

Case: 1:18-cv-07858 Document #: 65 Filed: 02/08/21 Page 9 of 11 PageID #:690

As discussed above, there is no evidence that Major Lake had any involvement in the shakedowns. Major Lake did not conduct the shakedowns of Plaintiff's cell, he did not find or remove contraband and excess property, and did not issue the resulting disciplinary reports, all of which were undertaken by correctional officers from other correctional centers. (Dkt. 45 ¶¶ 11, 12, 15-17). Additionally, Plaintiff does not know who ordered the January 17 and 24, 2017 shakedowns and no evidence suggests that Major Lake ordered these. (*Id*. ¶¶ 6, 7). Therefore, both because there is no evidence that Major Lake had a retaliatory motive or that he personally participated in the shakedown, Defendants' Motion for Summary Judgment for the First Amendment Retaliation claim is granted.

### III.   Due Process Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff's due process claims against Defendant Harris relate to his disciplinary hearing that resulted from Plaintiff having a banned book that was discovered during the shakedown. In his Complaint, Plaintiff alleges that Defendant Harris did not follow rules, found Plaintiff guilty "against his rights," and was found guilty without any hearing. (Dkt. 8 at 18–19).

"A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citations omitted). In the case of *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996), the Court held that the prisoner's due process rights were not implicated when prison officials fined him 50 cents, issued a

9

reprimand, and suspended his commissary privileges for his repeated improper possession of string and torn socks. The Court stated that such minor discipline does not implicate a liberty or property interest. *Id.* (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Sandin v. Conner*, 515 U.S. 472 (1995)).

Here, a hearing was held regarding Plaintiff's possession of his banned book and the only discipline that resulted was a mere "verbal reprimand." (Dkt. 45 ¶ 8, 13–14). The minor discipline that was imposed does not invoke the loss of life, liberty, or property, and therefore does not trigger due process rights. *See Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir. 1996); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding that a verbal reprimand and a two-week suspension of commissary privileges did not implicate liberty or property rights). Plaintiff's verbal reprimand does not implicate due process concerns.

In any event, the facts would rebut Plaintiff's allegations that he did not have a hearing and Defendant Harris did not follow the rules such that would implicate due process concerns. Due process requires that prisoners in disciplinary proceedings be given: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992). Contrary to what Plaintiff claims, the facts show that Plaintiff had a disciplinary hearing which followed proper procedures. (Dkt. 45 ¶¶ 13, 14; Dkt. 45-4; Dkt. 45-5). In his Response, Plaintiff alleges for the first time that he was not present during his disciplinary hearing. (Dkt. 61 at 15). Yet, the facts dispute this as well. The Final Summary Report of his disciplinary hearing indicates that he was present, that during the

10

hearing he did not request witnesses, and that he stated that he was not guilty. (Dkt. 45-4 at 2). Neither the law nor the facts support Plaintiff's due process arguments. Defendants' Motion for Summary Judgment for Plaintiff's Due Process Claim is granted.

## CONCLUSION

Because there are no disputes of material fact, Defendants' Motion for Summary Judgment [Dkt. 47] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: February 8, 2021